UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NEIL SANFT and MADELYN SANFT,                Case No._____

                Plaintiffs,

Against

JEWELRY DESIGNER SHOWCASE, INC.,             COMPLAINT
PPAD INC. & ASSOCIATES, and
ARTHUR D'ANNUNZIO,

                Defendants.
-------------------------------------------------------------X

      Plaintiffs (1) NEIL SANFT and (2) MADELYN SANFT (collectively "Plaintiffs" or the "Sanfts"), by their undersigned attorneys, Empire Law Group PLLC, as and for their Complaint against the Defendants herein, allege, upon information and belief as follows:

## PARTIES

      1.     Plaintiff NEIL SANFT is an individual, not a minor, residing in Monmouth County, State of New Jersey.

      2.     Plaintiff MADELYN SANFT is an individual, not a minor, residing in Middlesex County, State of New Jersey.

      3.     Defendant JEWELRY DESIGNER SHOWCASE, INC.("JDS") was and still is a Delaware corporation authorized to do business in the State of New York, with a principal place of business located at 4366A Victory Boulevard, Staten Island, New York 10314.

      4.     Defendant ARTHUR D'ANNUNZIO is an individual, not a minor, residing in Richmond County, State of New York.

5. Defendant PPAD INC. & ASSOCIATES ("PPAD") was and still is a New York corporation, with a principal place of business located at 4366A Victory Boulevard, Staten Island, New York 10314.

6. Defendant ARTHUR D'ANNUNZIO is a principal of JDS.

7. Defendant ARTHUR D'ANNUNZIO is a principal of PPAD.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between each Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.

9. Diversity of citizenship exists because Plaintiffs are both citizens of New Jersey, and Defendants are citizens of New York and Delaware.

10. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b).

## SUMMARY OF ACTION

11. This is an action to recover Plaintiff's money that is owed to them by Defendants.

## FACTS

12. Jewelry Designer Showcase, Inc. ("JDS") claims that it is a designer, manufacturer and wholesaler of mid-price and high-end jewelry items, and trader in precious metals and gemstones.

13. Defendant ARTHUR D'ANNUNZIO ("D'Annunzio") is a principal of JDS.

14. Defendants actively seek investors to support their business operations.

15. Plaintiffs are investors in JDS.

16. JDS Investors are provided with a certain private placement memorandum, a certain stock subscription agreement and a certain investor questionnaire.

17. Section 11(b) of the Stock Subscription Agreement provides for "Rights of First Refusal on Voluntary Transfers."

18. Section 11(b)(i) provides in relevant part as follows:

> Right of First Refusal of the Company - Subject to subsection (d) of this Section 11 below, in the event that I (the "Selling Stockholder") intend to sell, assign, transfer or otherwise voluntarily alienate or dispose of any Securities, I shall, prior to any such transfer, give written notice (the "Selling Stockholder's Notice") of such intention to the Company. The Selling Stockholder's Notice shall include the name of the proposed transferee, the proposed purchase price per share, the terms of payment of such purchase price and all other matters relating to such transfer and shall be accompanied by a copy of a binding written agreement of the proposed transferee to purchase such Securities from the Selling Stockholder. The Selling Stockholder's Notice shall constitute a binding offer by the Selling Stockholder to sell to the Company or its designee such number of Securities "Offered (the Securities") then owned by the Selling Stockholder as are proposed to be sold in the Selling Stockholder's Notice at the monetary price per share designated in the Selling Stockholder's Notice, payable as provided in Section 11(b) (ii) hereof. Not later than thirty (30) days after receipt of the Selling Stockholder's Notice, the Company shall deliver written notice (the "Company's Notice") to the Selling Stockholder stating whether the Company or its designee has accepted the offer stated in the Selling Stockholder's Notice. The Company may only accept the offer of the Selling Stockholder in whole and may not accept such offer in part. If the Company accepts the offer of the Selling Stockholder, the Company's Notice shall fix a time, location and date for the closing of such purchase, which date shall be not less than ten (10) nor more than thirty (30) days after delivery of the Company's Notice

19. Plaintiffs each signed a Stock Subscription Agreement with JDS on November 10, 2017 and made significant cash investments into the company.

20. Defendants forwarded certain emails to their investors on Wednesday, April 19, 2023 informing them that if they wanted to redeem their shares at this time, they simply had to contact JDS and begin that process.

21. On May 4, 2023 Plaintiff Neil Sanft signed a written notice requesting redemption of his investment in JDS, which totaled $63,098.00 at $5.00 a share, and $215,000.00 at $6.60 a share plus the value of the 500 shares that JDS gifted investors.

22. On May 4, 2023 Plaintiff Madelyn Sanft signed a written notice requesting redemption of her investment in JDS, which totaled $385,000.00 at $5.00 a share, and $50,000.00 at $6.60 a share plus the value of the 500 shares that JDS gifted investors.

23. Plaintiffs emailed their written redemption request notices to Defendants on May 5, 2023.

24. Defendants accepted Plaintiff's redemption request (the "Redemption Request") via email dated May 11, 2023.

25. In that email the Defendants informed the Plaintiffs that their redemption value "at this time is principal invested minus 10% for fees and expenses."

26. Defendants also stated in this same email that "the redemption will take approximately 120 days to complete."

27. Section 11(b)(i) of the Stock Subscription Agreement obligates JDS to "fix a time, location and date for the closing of such purchase, which date shall be not less than ten (10) nor more than thirty (30) days after delivery of the Company's Notice."

28. On June 5th, 2023, Defendants advised Plaintiffs that the redemption total was in review and that the completion date would be on or about September 2, 2023.

29. Defendants prepared and forwarded to Plaintiffs a Share Redemption and General Release ("Releases") as well as a Confidentiality Addendum to the Share Redemption and General Release ("Confidentiality Addendum") to execute as a prerequisite to funding their Redemption Request.

30. The Releases provided that Plaintiff Neil Sanft would receive $278,098.00 and Plaintiff Madelyn Sanft would receive $393,750.00.

31. Each Release specifically states that JDS will issue the "payment on or about September 2, 2023, after JDS receives this Release and its related Confidentiality Agreement fully executed and notarized."

32. The Releases and Confidentiality Addendum's were signed and notarized by Plaintiffs on September 5, 2023, and were contemporaneously forwarded to Defendants and their attorneys.

33. Defendant D'Annunzio confirmed, via email dated September 13, 2023, that "we are in receipt of your executed paperwork. Your redemption is scheduled for next week and will be transported via fedex . . ."

34. However, no payment was mailed.

36. On September 26, 2023, Defendants subsequently promised that "We are setting the date for the closeout of your two share sales for between October 17-19."

37. Again, no payment was made to Plaintiffs.

38. On October 18, 2023, Defendants informed Plaintiffs that in order to receive payment, Plaintiffs would be required to seek separate counsel.

39. To induce Plaintiffs to accept this new condition, D'Annunzio even promised to pay the costs related to the new attorney stating "It's not only for the company and shareholders

protection but it's also for your protection for anything after you and our company are no longer tied together. To show you how important it is get your local non connected firm and we will go as far as working with you on the costs related. I cannot explain too deeply but I think you are well versed enough to understand the reality of it if we are offering this option."

40. Plaintiffs relented and hired new counsel in hopes of expediting the payment.

41. However, despite substituting new counsel, no payment was made to Plaintiffs.

42. Defendants next required, as a prerequisite for payment, that Plaintiffs execute yet another Confidentiality Agreement, which Plaintiffs also executed and forwarded to Defendants on November 9, 2023.

43. On November 22, 2023, D'Annunzio emailed Plaintiffs, informing them that bank checks for the Redemption payments were ordered and would be drawn once funds were "released from pending."

44. After another week of silence and non-payment, Plaintiffs' demanded proof of funds from Defendants.

45. In response to that request, D'Annunzio provided what appears to be a doctored bank statement.

46. Even assuming that the bank statement was accurate, the company would have had sufficient funds in its current balance to issue the checks promptly to Plaintiffs.

47. D'Annunzio continued to make new excuses for the lack of payment and blamed it not only on his industry being considered high risk, but even blamed the delay on the war between Russia and Ukraine.

48. Defendants subsequently informed Plaintiffs of a 7-10 day business review required for all JDS incoming and outgoing receivables and all cash transactions.

49. 10 business days later, Defendants failed to pay Plaintiffs.

50. Nearly 14 days thereafter, D'Annunzio informed that due to additional banking restraints it was now more likely to be 10-12 business days, but again promised payment in the "next few days."

51. Again, no payments were made to Plaintiffs.

52. In February 2024, instead of providing payments to Plaintiffs', D'Annunzio informed Plaintiffs that he had been dealing with a "large opportunity for JDS" and attached a purported release that a family office had made a significant investment to acquire an equity position in JDS.

53. D'Annunzio then attempted to intimidate Plaintiffs' into not seeking legal action by stating "I will say this time if any further defamatory statements which we have logged and are existing already ever happen again especially if your client tries to follow a path of legal actions using lies and defamation to induce an outcome will use every extent legally afforded us to receive what we will be due monetarily."

54. To date, no payment has ever been received.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u><br>(Breach of Stock Subscription Agreement by all Defendants)

55. Plaintiffs repeat and reallege paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56. Pursuant to the Stock Subscription Agreement, defendants were obligated to, among other things, "close" the redemption of the Plaintiffs' shares no later than 30 days after the Company notifies the Investor that they have agreed to repurchase the shares.

57. Defendants breached the Stock Subscription Agreement by failing to pay the Plaintiffs.

58. Plaintiffs have duly performed all of their contractual duties and obligations under the Stock Subscription Agreement and otherwise.

59. By reason of the foregoing, Defendants are liable to Plaintiffs in an amount to be determined at trial but in no event less than $671,848.00 plus interest and attorneys' fees, costs, as well as other forms of equitable relief.

WHEREFORE, Plaintiffs demand judgment:

A. Granting each of its claims for relief; and

B. For the costs and reasonable attorneys' fees as otherwise provided by law; and

C. Such other and further relief which this Court may deem just and proper

## PLAINTIFFS DEMAND A JURY TRIAL

Dated: New York, New York
June 3, 2024

_____
Marc Gross, Esq.
Empire Law Group PLLC
315 Madison Avenue
3rd Floor
New York, NY 10017
marc@empire-lawgroup.com
phone: 212-548-6587
fax:    212-320-0415